## EX PARTE CARRAWAY.

1. Parties entitled to homestead may demand and receive the same out of their share of the proceeds of land, sold for partition.
2. Land was sold in a cause to which mortgagees and junior judgment creditors were parties, and by consent of parties, the mortgages were satisfied out of the proceeds of sale. After this, the owners of the land made application for homestead, which was resisted by the judgment creditors. *Held*, that the claim of homestead should have been allowed; that the equitable two-fund doctrine was inapplicable to these satisfied mortgages; and that the judgment creditors were not subrogated to the rights of the mortgagees.
3. This case distinguished from *State Savings Bank of Anderson v. Harbin*, 18 *S. C.*, 425, and *Ex parte Kurz*, 24 *Id.*, 468, approved and followed.

Before HUDSON, J., Georgetown, November, 1887.

The opinion sufficiently states the case.

*Mr. H. J. Haynsworth*, for appellants.

*Mr. Walter Hazard*, contra.

March 14, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. McG. Carraway died intestate in 1881, seized and possessed of a large and valuable real estate, and leaving eight children as his heirs at law, of whom Josephine and William E. Carraway were minors. Some time after the death of the father, Emeline E. Johnson sold her one-eighth interest to the other five adults, who thus became owners of six-eighths of the entire property. In 1884 the five adult heirs, to wit, James F., John G., Sydney F., McG. Carraway, and Elizabeth Green, executed and delivered to Emeline E. Johnson a mortgage of their undivided interests in the premises, to secure their bond for $3,000, and soon thereafter a second mortgage to Congdon, Hazard & Co. of the same interests, to secure their two bonds amounting to $3,277.58, both of which mortgages were duly recorded.

Subsequent to the execution and recording of these mortgages, seven judgments were obtained against these parties: one in favor of Baum, Marks & Co., for $314.10; one in favor of Zophar Mills, for $378.27; one in favor of Kaminski, for $2,114.10; and four others in favor of Congdon, Hazard & Co., aggregating $3,882.24; all of which were obtained in 1885 upon account of goods sold prior to the execution of the mortgages. In October, 1885, an action was commenced to partition the said real estate between the heirs, the two mortgagees above mentioned and the two minor heirs being parties defendant.

The case was referred to LeGrand Walker, Esq., to report all liens on the property, and whether the lands could be divided without injustice to the parties. The various lien creditors as above set forth appeared and proved their respective claims, which were reported by the referee, and also that the lands could not be partitioned without injury. This report was confirmed, and a sale of the land directed, and in March, 1887, the sheriff made the sale ordered, the bids amounting to $16,826, of which sum $9,610 were paid in. Whereupon, with the consent of all the parties, an order was passed May 4, 1887, directing the payments of costs, taxes, and the interest of the minors in the proceeds on hand, and further, that "out of the balance remaining in the hands of the sheriff, he do pay the mortgages of Emeline E.

Johnson and Congdon, Hazard & Co., by assigning to the said Emeline a bond and mortgage of Skinner (one of the purchasers at the sale) for $2,666.66, and the remainder in cash, and that he pay to Congdon, Hazard & Co. balance of cash on hand, and assign to them so much of a bond and mortgage on Edwin Harper for $3,466.66 (another of the purchasers at the sale) as shall be requisite to make up the amount due to said Congdon, Hazard & Co." This order was complied with, and the two mortgages were paid off, amounting to $7,370.41, and a portion of the land, for which the purchasers had not complied, in the same order was directed to be resold at the risk of the former purchasers. The resale has not yet been made.

In October. 1887, the five adult heirs filed their petitions in the cause, claiming that each was the head of a family, and praying a homestead as against the judgment creditors, who, as stated in the petition, were seeking to subject their interests to said judgments without first setting off to them said homestead, and they asked that their rights to homestead in the proceeds of the lands might be adjudged them, no homesteads having been previously set apart to them. The judgment creditors resisted this claim, on the ground that the two mortgage creditors had exhausted the homesteads, and that the balance of the fund on hand should be applied to the judgment creditors.

The case was heard by his honor, Judge Hudson, who, holding that the principle which this court applied in the case of the *State Savings Bank* v. *Harbin*, 18 *S. C.*, 425, (the two-fund doctrine) was applicable here, dismissed the petition with costs, and without adjudicating the *status* of the petitioners as heads of families, or the right of the creditors to resist their claims upon other grounds than that considered, ordered the proceeds of sale on hand and yet to accrue to be applied to the payment of the several judgments in the order of their priorities as ascertained. From this decree the petitioners have appealed, the single question in the appeal being whether the mortgage creditors, under the circumstances, exhausted the petitioners' homesteads, leaving the excess of the proceeds of the sale applicable to the judgments, with no right of homestead therein to the petitioners.

There is no doubt, that when lands are sold for partition among

parties having undivided interests therein, that so far as the question of homestead is involved, the proceeds of the sale represent the land, and claimants, if otherwise entitled to homestead, can obtain it out of said proceeds as effectually as though the lands had not been sold. *Norton* v. *Bradham*, 21 *S. C.*, 384. Nor is it necessary for the claimants to make application for the homestead before the sale takes place. *Ex parte Strobel*, 2 *S. C.*, 309. The judgment creditors' position is that the mortgage creditors had lien upon the entire interests of the petitioners in the lands in question, and that they had lien only on the excess thereof over and above the homestead, and that this state of facts presents the case of one creditor having lien upon two funds of a common debtor with other creditors having lien upon but one only, and they invoke the well established equitable doctrine in such cases of throwing the creditor, with lien on the two funds, upon that fund upon which the other creditors have no lien. And they rely, as did his honor below, upon the case of *The State Savings Bank* v. *Harbin*, *supra*.

That case is somewhat similar to this in one or more of its features, and yet it is different in several important particulars, as will be seen below. It is similar in the fact, that there, as here, the contest was between a debtor and his judgment creditors in reference to a claim of homestead by the debtor in lands, upon which he had given a mortgage, and against whom judgments had been obtained, and the effort upon the part of the judgment creditors was to have the mortgages satisfied out of the homestead, leaving the excess of the lands to the judgments. But it differed from this case in the facts, that there the debtor owned two distinct tracts known by different names, upon one of which the debtor resided, the other being near by, in fact adjoining; and further, there all of the creditors were before the court, the mortgagees having a lien upon both tracts, and the judgment creditors with their liens on the excess, and the debtor, who made his application before the rights of any of the parties had been adjudicated. Thus there were two classes of creditors, one with a lien upon two funds or sources of payment, and the other upon one only, both seeking redress. Under these circumstances, it

was a fit case for the application of the double fund doctrine, and the court very properly applied it.

Here, however, there has been no division, and the lands represented by the proceeds are *en masse*, and the mortgagees, by order of the court and by the consent of all parties, have been paid off and their mortgages satisfied and cancelled. They are no longer before the court, the only parties left being the debtor and the judgment creditors. Such being the state of things, the facts proper for the application of the two-fund doctrine are wanting, to wit, two creditors, one with a lien on two funds and the other with a lien upon one only. Instead of which, we have the ordinary case of a creditor endeavoring to enforce by final process collection of his claim upon property of his debtor, regardless of his right to a homestead.

We cannot assume that the mortgages were satisfied out of the proceeds of the debtor's homestead. All that we know is, that they have been satisfied, and no longer have any claim against the debtors, and that the judgment creditors are endeavoring to levy their executions, in substance, upon the property now belonging to the debtors. We think that the creditors, having remained silent until the mortgages were satisfied and extinguished, were too late in invoking the double fund doctrine, and that now, when there are no rights before the court to be adjudicated, except the ordinary claims of creditor and debtor, there is no room for the equitable principle suggested.

This conclusion is based upon the authority of *Ex parte Kurz*, 24 *S. C.*, 468. In that case the debtor, whose widow was claiming the homestead, died in possession of land which he held under a contract of purchase, no title having been executed. His judgment creditors attempted to throw the vendor upon so much of the land as covered the homestead claimed by the widow, on the two-fund doctrine. This court held that the facts did not present a case of two funds. The debtor not having titles, the general creditors had no lien on the land until the purchase money was paid, and the moment that was done, the vendor was out of the way, his claim having been satisfied, and no creditor was left except the judgment creditor with a single fund, to wit, the excess of the land after the vendor was paid. Under these circum-

stances, the homestead was adjudged to the widow.   So here, the mortgage creditors having been paid, and being out of the way before the contest as to the homestead arose, there seems to us to be but one class of creditors and but one fund before the court.

The two-fund doctrine being inapplicable for the reasons given, we think the doctrine of subrogation, which is but an auxiliary doctrine in such cases, is also inapplicable.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the case be remanded for such further proceedings as may be necessary.